Upon review of all of the competent evidence of record with reference to the errors assigned, the appealing party has shown good ground to reconsider the evidence. The Full Commission hereby REVERSES the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act, the defendant regularly employing more than three employees. Aetna Casualty and Surety Company was the compensation carrier on the risk at the time of plaintiff's injury.
2. On and prior to the date in question the plaintiff was regularly employed by the defendant-employer at an average weekly wage of $195.65 and on that date sustained an injury by accident arising out of the course of his employment. The compensation carrier paid the compensation at a rate of $130.43 per week from the date of his injury through January 29, 1991.
3. Plaintiff is a right-handed, 29-year-old single unemployed male who graduated from high school and has average intelligence. While still in high school he drove a school bus and was a bus boy at a local restaurant. After graduating from high school plaintiff initially became employed by Waldenstein Bakery in the janitorial department responsible for cleaning up the premises machinery and equipment, but was subsequently transferred to the production area where he worked as a pan setter and then a lead man. He worked a total of four years at the bakery and was next employed by Impact Furniture Company for six to eight months operating a tow motor and a ripsaw.
4. In approximately August of 1989 plaintiff became employed in defendant-employer's shipping department as a dock worker on the first shift responsible for loading and unloading trucks requiring him to handle bolts of material weighing in the 8 to 50 pound range or more.
5. Around this same time plaintiff also began a second, part-time job cleaning rooms at the Icard Inn (motel), but was later given a desk job primarily working on the weekends running the cash register and answering the telephone and continued to work there until March of 1992.
6. Plaintiff has a long prior history of anxiety and/or psychologically-related physical complaints for which his family physician, Dr. John H. Sherrill, has prescribed antidepressants. The involved complaints included dizziness, hyperventilation, tiredness and gastrointestinal complaints such as reflux and a spastic colon manifested by episodes of diarrhea. He has also been involved in a number of vehicular accidents, including a motorcycle accident when he was in the eighth grade resulting in a severe concussion, being unconscious for a substantial period of time and nearly dying, an automobile accident on June 4, 1987 resulting in back and neck injuries for which he was treated at the emergency room as well as by Dr. Sherrill and another automobile accident on December 12, 1989 resulting in a head injury for which he was seen at the emergency room.
7. On January 6, 1990 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when plaintiff fell approximately 11 feet onto a concrete floor. As a consequence of this fall, plaintiff injured his right wrist, elbow, shoulder and neck.
8. On January 6, 1990 at approximately 2:00 a.m., plaintiff presented himself at the emergency room of Valdese General Hospital for injuries sustained in the aforesaid work-related accident.
9. On February 9, 1990 defendant-employer terminated plaintiff from employment with the company. The ground given by defendant-employer for plaintiff's termination was, "He missed days from work unexcused."
10. A Form 18 filed with the Commission on February 20, 1990 indicates that the plaintiff's injury consisted of a pinched nerve in the hand and arm.
11. Plaintiff was subsequently treated for his injuries by Dr. John H. Sherrill, internist, and was subsequently referred by Dr. Sherrill to Dr. Glugover, an orthopaedic surgeon, for examination and treatment of plaintiff's right wrist and arm. On February 21, 1990 Dr. Glugover found plaintiff to have inflammation of the ulnar nerve or ulnar nerve neuritis.
12. The defendant-carrier accepted liability and made payments to plaintiff from the date of his injury through the date that he reached maximum medical improvement on January 29, 1991 at the rate of $130.43 per week. However, said payments were not paid pursuant to an Agreement approved by the Commission.
13. On March 7, 1990 plaintiff went to see Dr. Moretz with continued complaints of arm pain. Dr. Moretz referred plaintiff to Dr. James Stutesman. On March 15, 1990 an EMG and nerve conduction velocities of the right upper extremity were performed by Dr. James Stutesman, a rehabilitation specialist. The results of these tests found no evidence of ulnar compression at the right elbow. However, there was a suspicion of a probable right C-8 radiculopathy. Upon receiving the results from Dr. James Stutesman, Dr. Moretz referred plaintiff to Dr. David Jones. On April 10, 1990 plaintiff was seen by Dr. Jones. This visit revealed ulnar nerve involvement at the right elbow.
14. Plaintiff was referred by Dr. Jones to Dr. Andrea Stutesman, who saw plaintiff on December 17, 1990, for further evaluation for pain and work rehabilitation as well as work hardening.
15. On January 25, 1991 Dr. Andrea Stutesman released plaintiff to return to work full-time, unrestricted, to his usual job as shipping dock worker beginning on January 28, 1991. Plaintiff was capable of working full-time at a medium-heavy level which would allow plaintiff to lift between 50-70 pounds. Plaintiff was unrestricted in squatting, bending, twisting, kneeling, sitting, standing, walking and climbing stairs. However, the record reveals that no effort was made by the plaintiff to find suitable employment. Plaintiff did maintain his part-time job at the Icard Inn. During the period from January 6, 1990 through January 29, 1991 plaintiff earned wages from Icard Inn and received full temporary total disability benefits through defendant-employer. Plaintiff's employment at Icard Inn ended in March 1992 when he pointed a gun at the motel's owner after a dispute arose between the two of them.
16. Following plaintiff's release to return to work in January of 1991, with no restrictions, plaintiff on his own returned to Dr. David Jones several more times during 1991. Plaintiff had complaints of persistent right elbow, right shoulder, right forearm, and posterior cervical pain. Based upon these continued complaints of pain, Dr. Jones indicated that plaintiff appeared to be suffering from "all the clinical characteristics of an ulnar neuropathy on the right." Based upon plaintiff's continued complaints, Dr. Jones eventually performed a right ulnar nerve transposition on February 3, 1992. Because of this surgery, plaintiff was unable to work from February 3, 1992 to April 10, 1992 when Dr. Jones released plaintiff from his care stating that plaintiff had reached maximum medical improvement.
17. As a result of his February 3, 1992 surgery, which was in the opinion of Dr. Jones casually related to his admittedly compensable injury of January 5, 1990, plaintiff was unable to earn his pre-injury wages from February 3, 1992 through April 10, 1992. There is no evidence of how many days, if any, plaintiff was totally unable to work due to his surgery. Based upon the evidence presented, plaintiff returned to work after his surgery at Icard Inn earning some wages until March 1992 when he was terminated for assault by pointing a gun at the motel owner during a dispute.
18. Plaintiff reached maximum medical improvement after his surgery on April 10, 1992 and Dr. Jones assigned him a 5% permanent partial impairment rating to his right arm.
19. There is also an issue concerning whether plaintiff's compensable injury aggravated or accelerated his pre-existing mental disorders. Dr. Cutting and Dr. John Middleton opined that the on-the-job accident and the incapacity of plaintiff to maintain work may have significantly contributed to his pre-existing emotional problems. No weight is given to his opinion by Dr. Cutting in that Dr. Cutting first saw plaintiff on September 22, 1992 and only saw plaintiff again for a follow-up session on September 25, 1992. Dr. Cutting relied upon an incomplete and inaccurate history given to him by plaintiff and incomplete records regarding plaintiff's other past injuries, which may have contributed to his depression. The Full Commission finds that other factors such as plaintiff's numerous automobile accidents, plaintiff's criminal charges and other personal matters unrelated to plaintiff's injury, aggravated and accelerated plaintiff's mental condition. Plaintiff has a history of severe emotional disturbance since childhood. Plaintiff is diagnosed with major depression with psychotic features. The escalation of plaintiff's mental condition was not a direct and natural consequence of his work-related injury.
20. Prior to January 5, 1990 plaintiff had an episode of severe depression and suicidal thoughts in 1989. Plaintiff had also had conflicts with supervisors at work and periods of anger and despondency. Plaintiff's behavioral history followed cycles of depression and hostility followed by short periods of improvement.
21. The Commission ordered on April 4, 1995 that the plaintiff submit to an examination on April 28, 1995 at 10:00 a.m. by Dr. Gary Poehling, Out-Patient Rehab Center, Highland Plaza Building, 2150 Country Club Road, Winston-Salem, North Carolina for evaluation and determination of the degree of permanent disability of plaintiff's right arm.
22. The Commission has received a medical report from Dr. Gary Poehling dated April 28, 1995 concluding that the plaintiff's arm disability, because of weakness and lack of endurance, and the hyper-sensitivity and lack of endurance and functional loss to plaintiff's arm, the patient has a 17 percent permanent partial disability to his right upper extremity. The Full Commission gives greater weight to the opinion of Dr. Poehling over that of Dr. Jones on plaintiff's permanent partial impairment rating.
23. Plaintiff executed assignment of reimbursement on November 5, 1991 to remit to the North Carolina Division of Vocational Rehabilitation Services payment from any monies due to or arising out of his injury.
24. The North Carolina Division of Vocational Rehabilitation Services expended the sum of $4,697.95 as of April 30, 1992 for the care and treatment of the plaintiff.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. As a result of plaintiff's compensable injury, plaintiff was temporarily totally disabled from January 5, 1990 through January 28, 1991, and is entitled to compensation at a rate of $130.43 per week during said period. In that defendant-employer has already paid temporary total disability compensation to plaintiff from February 9, 1990 to January 29, 1991, no further temporary total disability compensation is due plaintiff during this period. As a result of his compensable injury plaintiff had surgery on his right arm on February 3, 1992. Plaintiff is entitled to temporary total disability benefits during the period from February 3, 1992 through the date of maximum medical improvement on April 10, 1992. Defendants are entitled to a credit for any wages earned by plaintiff during said period. N.C.G.S. § 97-29.
2. As a result of plaintiff's compensable injury, plaintiff is entitled to the benefits under N.C.G.S. § 97-25 with respect to all expenses for medical care rendered, including the medical care obtained through the North Carolina Division of Vocational Rehabilitation Services in the amount of $4,697.95; and the future medical treatment, provided it is reasonably required to effect a cure, afford him relief from his injury and the consequences thereof, or tend to lessen his period of disability. N.C.G.S. § 97-25.
3. Based upon the greater weight of the evidence, plaintiff has a 17 percent permanent partial disability to his upper right extremity and is entitled to permanent partial disability benefits for a period of 40.8 weeks. N.C.G.S. § 97-31.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to an attorney fee, defendants shall pay plaintiff temporary total disability benefits at a rate of $130.43 per week for the period of February 3, 1992 through April 10, 1992. This sum, having already accrued, shall be paid to plaintiff in one lump sum. Defendants are entitled to a credit for any wages earned by plaintiff during said period.
2. Defendants shall pay to plaintiff in one lump sum compensation at the rate of $130.43 per week for 40.8 weeks for his 17% permanent partial disability to his arm, subject to the attorney fee provided in paragraph 6.
3. Defendants shall pay for plaintiff's medical care and treatment resulting from his compensable injury by accident, including those due Dr. D. Scott Cutting, Dr. Gary Poehling and the North Carolina Division of Vocational Rehabitation Services, when bills for the same have been submitted and approved through procedures adopted by the Industrial Commission, and shall pay all future medical expenses arising from plaintiff's compensable injury for so long as they are reasonably required to provide relief and/or tend to lessen plaintiff's period of disability.
4. Defendants shall pay expert witness fees in the amount of $400.00 to Dr. Andrea Stutesman, $250.00 to Dr. D. Scott Cutting, each of whom appeared before the Industrial Commission by way of deposition and gave expert medical testimony herein as well as the $200.00 expert witness fee previously awarded Dr. Glugover, the $125.00 awarded Dr. Sherrill and the $245.00 to psychologist John Middleton. Defendants shall further pay the fees of Dr. David Jones, Dr. Gary Poehling, and Dr. Joseph Baird.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff plus unreimbursed expenses of $450.00 is hereby approved for plaintiff's counsel of record. Such fees shall be deducted from the compensation due plaintiff and paid directly to Wayne W. Martin.
6. Defendants shall pay all costs.
FOR THE FULL COMMISSION
 S/ ___________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CMV/CNP/mj 10/18/95